UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                    **Hon. Hugh B. Scott**

        v.

                                    04CR80A

                                    **Report**
DARRYL TOLLIVER,                          **&**
                                    **Recommendation**
        Defendant.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 8, May 19, 2004). The instant matter before the Court is defendant's motion (Docket No. 16) to suppress evidence (namely firearms and defendant's statements).

## BACKGROUND

Defendant is charged in a one-count indictment (Docket No. 4) with violating 18 U.S.C. § 922(g)(1), felon in possession of a weapon.

On the evening of April 26, 2004, task force officers Daniel Granville and Dennis Gilbert stopped defendant's Oldsmobile after they observed the defendant drive erratically down Genesee Street, in Buffalo, and failing to signal a lane change on two occasions (see Docket No. 19, Gov't Response Memo. at 1-2). These officers followed defendant after noticing him and another male at the intersection of Mills Street and "A" Street who appeared to have engaged in a quick hand-to-hand transaction (Docket No. 52, Gov't Post-Hearing Memo. at 1-2). The

officers followed defendant's car and noted that he made two lane changes on Genesee without signaling (Docket No. 42, Tr. Mar. 16, 2005, at 21-22, 87, 89, 93). After witnessing the second illegal lane change, the officers decided to pull the car over. Officer Gilbert approached the driver's side of the stopped vehicle and smelled there the odor of marijuana from the car. Officer Granville, approaching the passenger's side of the car, saw the passenger, Melanie Weigel, stuffing something in her waistband (id. Tr. at 128, 23-30, 96), which later turned out to be her work identification.[1] Gilbert asked the driver where the marijuana was and defendant stated that "they already smoked it." (Id. Tr. at 24, 97.) Gilbert asked defendant to step out of the vehicle, which defendant complied. Gilbert then asked if he could take a look and defendant responded "go ahead, there's nothing in there" (id. Tr. at 24-25, 97, 130, 132). Gilbert searched the car and found a loaded handgun (id. Tr. at 27-34), then arresting the defendant. After being placed under arrest, defendant denied possessing the weapon (id. Tr. at 24, 38-39, 134).

Defendant moved on September 14, 2004 (Docket No. 16) to suppress all evidence obtained as result of the stop and search of the car he was in, contending that the search was conducted without a warrant, without probable cause or reasonable suspicion of criminal conduct.

An evidentiary hearing was begun on March 16, 2005, continued on April 7, May 27, and September 12, 2005 (Docket Nos. 31, 35, 42-44), at which defendant testified. He testified that he used the turn signal when changing lanes on Genesee Street (Docket No. 44, Tr. May 27, 2005, at 230, 231). He also stated that he did not consent to the search of his car, believing from a prior encounter with the police that he could not refuse when the officer stated that he was

---

[1] When confronted by these officers, Wiegel gave a false name to the officers.

going to search it (id. at 232, 231-32).  He produced a witness, his former girlfriend Wiegel, who testified that she was surprised when the officers pulled the car over on the charge of failing to signal the lane changes because she observed defendant use his turn signals (Docket No. 43, Tr. Apr. 7, 2005, at 198, 197).  Defendant points to various discrepancies in the officers' testimony regarding the April 2004 stop as well as prior incidents between those officers and defendant.

After some adjournments and extensions of time (see Docket Nos. 23, 47, 50), post-hearing submissions were due by January 17, 2006 (Docket Nos. 51 (Def. memo.), 52 (Gov't Memo.)), and the motion then was deemed submitted on January 17, 2006 (Docket No. 50).

## **DISCUSSION**

I.   Probable Cause to Stop

Defendant argues that the Government did not establish, by a preponderance of the evidence, that he committed a traffic infraction to warrant a stop, namely that the Government did not establish that defendant did not use his turn signal to enter the passing lane on Genesee Street (see Docket No. 51, Def. Post-Hearing Memo. at 2-17).  He points to inconsistencies in the officers' testimony regarding the basis for the stop (id. at 7-11, 12).  The officers could not testify to the provision of the New York Vehicle & Traffic Law violated by defendant in not signaling his change of lanes (id. at 12-13), cf. N.Y Veh. & Traf. Law §§ 1163(a), (d), 1101, 155.  These officers had stopped defendant previously, which defendant argues was a pretextual stop as well the present stop was (id. at 13).  Alternatively, defendant contends that the Government has not established that he voluntarily consented to the search of the car (id. at 17-19).

The Government responds that the officers had probable cause to stop and search defendant's vehicle from his traffic infraction (Docket No. 52, Gov't Memo. at 6-10, 13-17,

3

citing United States v. Scopo, 19 F.3d 777 (2d Cir.), cert. denied, 513 U.S. 877 (1994); United States v. Dhinsa, 171 F.3d 721 (2d Cir. 1999), cert. denied, 534 U.S. 897 (2001)).  In both Scopo and Dhinsa, the Second Circuit upheld the search of a vehicle following a stop for a traffic infraction similar to defendant's in this case.  These officers also had probable cause to believe the vehicle contained contraband from the odor of marijuana that came from the vehicle when defendant opened his window (id. at 10-11, 14-15).  The Government alternatively argues that defendant consented to the search (id. at 12, 15).  Defendant testified in the hearing that he told Officer Gilbert to go ahead and check his car (Docket No. 44, Tr. of May 27, 2005, at 235-36; Docket No. 42, Tr. of Mar. 16, 2005, at 24-25, 96, 97, 130).  The Government contends that defendant's post-arrest statements were spontaneous and not from police interrogation (Docket No. 52, Gov't Memo. at 16).

    As noted by the Second Circuit, the "use of a traffic violation as a pretext to stop a car in order to obtain evidence of some more serious crime is of no constitutional significance," Dhinsa, supra, 171 F.3d at 724-25, citing Whren v. United States, 517 U.S. 806, 814, 813, 815-19 (1996); Scopo, supra, 19 F.3d at 782-83.  Defendant argues that the officers and the Government need to cite a specific Vehicle & Traffic Law infraction in order to justify the stop (Docket No. 51, Def. Memo. at 13).  But Dhinsa construed the Supreme Court's decision in Whren and found that "an observed traffic violation legitimates a stop even if the detectives do not rely upon the traffic violation," Dhinsa, supra, 171 F.3d at 725.  The observation of the traffic infraction alone creates an objective circumstance to justify the traffic stop, see id.  Thus, the officers did not need to cite provisions of the Vehicle & Traffic Law to substantiate the stop.

4

As the Second Circuit held in Dhinsa, supra, 171 F.3d at 724-25, the officers' subjective intent is also immaterial for a stop of a car if the officers witness a traffic infraction (citing Whren, supra, 517 U.S. at 813, 815-19; Scopo, supra, 19 F.3d at 782-83. Thus, the fact that these officers may have had prior traffic or arrest encounters with this defendant is immaterial to the basis for the traffic stop at issue here.

Defendant contends that the Government has not proven that a traffic infraction had occurred to justify the stop. The Second Circuit, however, upheld the factual finding of the officers' credibility in Dhinsa to support the factual basis for the stop, id. at 726. Here, defendant points to discrepancies from March 2005 testimony for an April 2004 traffic stop and search and the inconsistencies between the officer's testimony, and inconsistencies regarding prior traffic stops by these officers of this defendant. Regarding the April 2004 stop, defendant relies upon one officer testifying that defendant's car changed lanes without signaling while the other officer stating that the vehicle "swerved" into the parking lane, again without signaling (see Docket No. 51, Def. Memo. at 5). The traffic infraction, however, is the failure to signal the lane change, not the degree of recklessness with which defendant may have been driving (or the officer's characterization of defendant's driving whether he swerved or not). Thus, the officers had grounds to stop defendant's vehicle.

Once the vehicle was stopped and the window opened, Officer Gilbert smelled marijuana. That provided probable cause to search the vehicle for contraband. But the search for contraband indicated by the marijuana odor was not limited to that drug.

5

II.     Consent to Search

Alternatively, the Government contends that defendant consented to the search of his vehicle. Defendant was outside of his car when Officer Gilbert said "you know we're going to take a look in the vehicle" and defendant said "go ahead, there's nothing in there" (Docket No. 42, Tr. Mar. 16, 2005, at 26). In cross-examination, Gilbert stated that by phrasing the statement this way, he was asking for defendant's consent (id. at 97-99), but conceding that he did not ask may he or could he search (id. at 98, 99).

Defendant counters that the officer stated that he was going to look in the vehicle and defendant merely acquiesced (Docket No. 51, Def. Memo. at 17). He testified that he did not consent to this search and that when Gilbert said that he was going to search the car as he was entering it, that defendant thought he was in a "no-win situation" and could not refuse (Docket No. 44, Tr. May 27, 2005, at 232, 234-35).

The issue, then, is whether the Government met its burden of proving that this exchange was a voluntary consent to search. The Government has the burden of proving that the consent was freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548 (1968); see Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). The totality of the circumstances determines whether consent was voluntary and the product of defendant's "free and unconstrained choice, rather than a mere acquiescence in a show of authority." United States v. Wilson, 11 F.3d 346, 351 (2d Cir. 1993), cert. denied, 511 U.S. 1025, 1041, 1130 (1994); United States v. Garcia, 56 F.3d 418, 422 (2d Cir. 1995). Defendant was not under arrest or otherwise in a coercive position when he told the officers to go ahead and search (see Docket No. 42, Tr. Mar. 16, 2005, at 131 (Granville testifying that defendant and Wiegel were not in handcuffs or

6

had guns pointed at them when car was searched); Docket No. 44, Tr. May 27, 2005, at 236-37 (defendant testified, in cross-examination, that he was not handcuffed while the search was conducted)).  Thus, the totality of circumstances here indicates that defendant voluntarily consented to the search of his car.

III.    Remaining Evidence

Defendant concludes that other evidence obtained, including his statements, were the fruit of the poisoned tree and should also be suppressed (Docket No. 51, Def. Memo. at 19).  Since no constitutional violation was found in the stop and subsequent search, the evidence subsequently obtained also should not be suppressed.

## **CONCLUSION**

Based upon the above, it is recommended that defendant's motion (Docket No. 16) to suppress evidence be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME**

**WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
February 9, 2006